United States District Court
Southern District of Texas
**ENTERED**
December 12, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PATRICK DENNIS HOSTETTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00182 |
| | § | |
| ARANSAS COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Patrick Dennis Hostetter, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For purposes of screening, the undersigned recommends that all of Plaintiff's claims against **Aransas County and Armando Chapa (Chapa), Jason Andrade (Andrade), Joshua Doane (Doane), and Manuel Solis (Solis)** in their official and individual capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  The undersigned

recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

## I.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the Garza West Unit in Beeville, Texas.  Plaintiff's allegations in this case arise in connection with his previous confinement as a pretrial detainee at the Aransas County Detention Center (ACDC) in Rockport, Texas.

In this action, Plaintiff sues the following defendants: (1) Aransas County; (2) Deputy Chief Chapa); (3) Captain Andrade; (4) Officer Doane; and (5) Officer Solis. (D.E. 1, p. 3)  Plaintiff generally claims that Defendants acted with deliberate indifference to his serious medical needs by failing to report an accident involving an inmate transport van and giving Plaintiff immediate medical attention for his injuries

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).

suffered in the accident.  (*Id.* at 4-7).  Plaintiff seeks monetary relief and criminal charges filed against the individual defendants.  (*Id.* at 4).

On September 21, 2022, the undersigned conducted a *Spears*[2] hearing where Plaintiff was given an opportunity to explain his claims.  The following representations were made either in Plaintiff's Original Complaint (D.E. 1) or at the *Spears* hearing.  At the time of the *Spears* hearing, Plaintiff was 36 years old.  (D.E. 16, p. 4)  He is 6'2" tall and weighs 240 pounds.  (*Id.*).

At all relevant times, Plaintiff was held at the ACDC as a pretrial detainee.  (*Id.* at 4-5).  On November 8, 2021, Plaintiff was brought into custody at the ACDC on charges of forgery and possession of methamphetamines.  (*Id.*).  On the morning of April 20, 2022, Plaintiff was transported by van, along with five other inmates, from the ACDC to the Aransas County Courthouse.  (*Id.* at 6-7).  Plaintiff was scheduled to appear in court that morning on motions to appoint counsel and for a bond reduction.  (*Id.* at 6).  Doane and Solis placed Plaintiff in the van and restrained him.  (*Id.* at 7).  Plaintiff had a chain around his chest and back, along with handcuffs on his wrists in the front and shackles around his ankles.  (*Id.*).  Plaintiff was not wearing a seatbelt.  (*Id.* at 8).  He was seated in the very back seat behind the driver, which was the closest to the back door on the left.  (*Id.* at 10).  The van was driven by Officer Doane with Officer Solis in the front passenger seat.  (*Id.* at 7).

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

At 8:31 a.m., Doane backed the transport van into a large fence post not attached to the courthouse while dropping off the inmates for court.  (*Id.* at 8).  Plaintiff testified that he immediately sustained whiplash and injuries to his head, neck, back, and wrists.  (*Id.*).  Plaintiff described his injuries as feeling his neck and spine between the shoulder blades pop, having his hands go numb, and sustaining a sprain to his wrists.  (*Id.* at 11).  Plaintiff further felt extreme pain, a backache, a rise in blood pressure, and the beginning of a migraine.  (*Id.*).

After Solis opened the van and instructed the inmates to exit, Plaintiff explained to him that his neck and back were injured and that he needed medical attention and an ambulance.  (*Id.* at 9, 12).  Solis responded by laughing at Plaintiff and telling him that he was not hurt.  (*Id.*).  Solis and Doane checked out the damage to the back of the van and laughed about it.  (*Id.*).

After entering the courthouse and being seated for court, Plaintiff explained to Doane that he was not feeling good and needed an ambulance.  (*Id.* at 13).  Doane responded by putting his dead down and shaking "his head no."  (*Id.*).  While in the courthouse, Plaintiff testified that he felt "throbbing pain shooting up and down to [his] head" and that his "wrist and hands were numb."  (*Id.*).  Plaintiff further stated that he had trouble concentrating and sitting still in his chair.  (*Id.*).

Upon completion of the court hearing, Plaintiff again explained to Doane that the was not feeling well and needed to be checked out immediately.  (*Id.* at 14).  Doane responded by telling Plaintiff that we would be okay and shook "his head no."  (*Id.*).

Plaintiff testified that, by the end of the hearing, he was in pain and feeling dizzy and nauseous.  (*Id.* at 15).  Plaintiff's hands remained numb, and his back "was throbbing with a shooting pain up and down, with a migraine continuously."  (*Id.*).

   Plaintiff left the courthouse at 11:35 a.m. following the completion of his hearing.  (*Id.* at 16).  When Plaintiff was placed back into the transport van, he again told Solis that he was not feeling well, that he was in extreme pain, and that he wanted medical attention.  (*Id.* at 17-18).  Solis responded by laughing in Plaintiff's face and instructing Plaintiff to "get back in line and enter the van."  (*Id.*).  Plaintiff was placed in his seat without having the seatbelt applied.  (*Id.* at 18).  Doane and Solis proceeded to drive Plaintiff back to the ACDC.  (*Id.*).

   After returning to the ACDC, Plaintiff repeated his request for medical attention. (*Id.*).  Solis told Plaintiff to "keep [his] mouth shut about the accident" and ordered Plaintiff inside the jail.  (*Id.*).  Plaintiff immediately sought medical attention from an ACDC officer.  (*Id.* at 19).  Plaintiff, however, sat in his cell for over an hour.  (*Id.*).

   According to Plaintiff, neither Solis nor Doane took any action to get Plaintiff any medical attention or treatment for his injuries suffered in the van accident.  (*Id.* at 20). Plaintiff had no interaction with Solis or Doane for the rest of the day after returning to the ACDC from the courthouse.  (*Id.* at 21).  Plaintiff also had no encounters that day with either Capt. Andrade or Deputy Chief Chapa.  (*Id.*).

While in his cell pod, Plaintiff asked another ACDC officer that he wanted to be taken to the nurse's office to be checked out.  (*Id.* at 19).  This officer proceeded to contact a nurse about Plaintiff's request.  (*Id.* at 19-20).  Around 1:00 p.m., a nurse named Melissa pulled Plaintiff from his cell and took Plaintiff to the medical room for x-rays.  (*Id.* at 19, 22).  Melissa also provided Plaintiff with 800 milligrams of Ibuprofen which did not help Plaintiff.  (*Id.* at 22).

Plaintiff did not receive any additional medical treatment for his injuries between April 20 and April 23, 2022.  (*Id.* at 22-23).  Plaintiff testified that his pain levels and condition worsened during this time period.  (*Id.* at 23).  Plaintiff also felt "extremely groggy, nauseous, [and his] blood pressure was through the roof."  (*Id.* at 24).  During this time period, Plaintiff continued to feel extreme pain shooting up and down his spine, in between his shoulder blades, and a migraine.  (*Id.*).  Plaintiff took both Ibuprofen and Tylenol, provided to him by nurses, which did nothing other than relieve his headache for two hours at a time.  (*Id.* at 24-25).

Between April 20 and 23, 2022, Plaintiff submitted medical requests and grievances seeking medical attention.  (*Id.* at 25).  In a request form sent on April 21, 2022, Plaintiff asked to be taken to a hospital to receive an MRI or clinical examination with regard to his injuries and pain levels.  (*Id.* at 25-26).  Plaintiff received a response stating that all his x-rays were normal, that there was nothing to warrant further testing, and that he has Tylenol for soreness and headache.  (*Id.* at 25-26).

On April 22, 2022, Plaintiff's submitted a request seeking a copy of the accident report with regard to the transport van's wreck in the courthouse parking area on April 20, 2022.  (*Id.* at 26).  This request was forwarded to Deputy Chief Chapa, who responded that no accident report had been filed due the accident causing no damage to either the van or the courthouse property.  (*Id.*).  Chapa further responded that Plaintiff had been provided with x-rays which did not support Plaintiff's claimed injuries.  (*Id.*).

On April 22, 2022, Plaintiff submitted another request seeking medical attention in the form of a clinical examination or MRI and complaining about the negligence of Doane and Solis as the cause of his injuries.  (*Id.* at 26-27).  Chapa responded that there were no abnormalities observed on the x-rays and that Dr. Bingham had made no recommendations.  (*Id.* at 27).

On April 22, 2022, Plaintiff submitted a grievance complaining about the conduct of Doane and Solis and the inadequate medical attention for his injuries.  (*Id.* at 27-28).  Chapa responded that Doane had submitted an incident report as requested.  (*Id.* at 28).  Chapa further explained that Plaintiff's x-rays were negative, that the accident did not even result in a scuff on the van's bumper, and that Dr. Bingham did not recommend an MRI.  (*Id.*).

Since April 23, 2022, Plaintiff received no treatment in the form of physical therapy.  (*Id.* at 29).  Plaintiff was prescribed: (1) Gabapentin on May 27, 2022; (2) Lisinopril for high blood pressure on June 10, 2022; (3) Melatonin on June 10, 2022; (4) Protonix for heartburn on June 10, 2022; (5) Procardia for high blood pressure on June

10, 2022; and (6) Tizanidine on June 10, 2022.  (D.E. 16, pp. 29-30).  On May 27, 2022, Dr. Bingham provided Plaintiff with "a double mat pass and a double blanket pass to help with the pain and suffering in [Plaintiff's] back and neck and to try and help [Plaintiff] sleep." (*Id.* at 32).   Plaintiff was also given a bottom bunk pass.  (*Id.* at 32-33).

On June 15, 2022, Plaintiff eventually was taken for an MRI as recommended by Dr. Bingham.  (*Id.* at 34).  According to Plaintiff, the MRI revealed that Plaintiff had four herniated discs between his shoulder blades which were all caused by the van wreck and whiplash.  (*Id.* at 35).  Plaintiff was told that the chains and handcuffs around his chest contributed to a significant injury.  (*Id.*).

On July 29, 2022, Plaintiff complained to Dr. Bingham that his pain levels were increasing and that he was unable to sleep or remain still for a long period of time.  (*Id.* at 30).  Dr. Bingham prescribed Plaintiff with a narcotic called Lyrica.  (*Id.*).  Dr. Bingham further increased Plaintiff's dosage of Tizanidine.  (*Id.* at 31).  Plaintiff clarified that only the Gabapentin, Tizanidine, and Lyrica medications related to his injuries suffered on April 20, 2022.  (*Id.* at 32).  On August 16, 2022, all of Plaintiff's medical passes and medications were taken away with the exception of his blood pressure medications, Protonix, Tizanidine, and bottom bunk pass.  (*Id.* at 31, 33).  Plaintiff received no more medical treatment since his medical passes were taken away.  (*Id.* at 33).

Plaintiff testified that he still suffers from the injuries incurred in the van accident.  (*Id.* at 35).  While his wrist has healed and his headaches have gone away, Plaintiff has

constant throbbing and aching in his back and shoulders.  *Id.*  Plaintiff also has trouble sleeping as well as sitting or standing for longer than thirty minutes at a time.  (*Id.*).

Plaintiff sues Doane for "personal injury and medical neglect."  (*Id.* at 36).  Plaintiff holds Doane responsible for failing to keep him safe.  (*Id.*).  Plaintiff seeks to hold Doane liable in his individual and official capacities.  (*Id.* at 36-37).  Plaintiff sues Solis for failing to report the accident, medical neglect, failing to allow for Plaintiff to receive medical treatment, and failing to call for an ambulance.  (*Id.* at 37).   Plaintiff sues Solis in his individual and official capacities.  (*Id.*).

Plaintiff sues Capt. Andrade for harassing him since the van accident and calling Plaintiff a "freeloader."  (*Id.* at 37).  According to Plaintiff, Andrade threatened to take away Plaintiff's medications or passes if Plaintiff continued to ask the nurses for medications and causing a scene.  (*Id.* at 38).   Plaintiff sues Andrade in his individual and official capacities.  (*Id.*).

Plaintiff sues Chapa for failing to provide him medical treatment in connection with his informal requests and formal grievances.  (*Id.* at 39-40).  In acknowledging that he communicated to Chapa through written requests and grievances, Plaintiff holds Chief Deputy Chapa responsible for failing to "get to the bottom of [Plaintiff'] injuries … and basically denying [Plaintiff] medical treatment."  (*Id.* at 40-41).

Plaintiff sues Aransas County on the theory that the county is responsible for the actions of its employees.  (*Id.* at 41).  Plaintiff holds Aransas County responsible for the

actions of those defendants who denied him help for his medical issues and failed to redress his complaints through the grievance process.  (*Id.* at 41-42).

Plaintiff clarified at the *Spears* hearing that he seeks monetary relief and criminal charges to be filed against Doane and Solis.  (*Id.* at 42-43).

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the

victim, the improper conduct, and the defendant's performance of official duties.

*Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.    DISCUSSION

### A.  Criminal Charges

Plaintiff seeks criminal charges to be filed against Doane and Solis.  (D.E. 16, pp.

42-43).  Prisoners, however, have no constitutional right to compel the criminal

prosecution of someone else.  *Hicks v. Bingham*, No. No. 6:18cv308, 2018 WL 6238003,

at *3 (E.D. Tex. Sept. 21, 2018) (citing *Oliver v. Collins*, 914 F.2d 56 (5th Cir. 1991)),

*report and recommendation adopted* 2018 WL 6192290 (E.D. Tex. Nov. 28, 2018).

Private citizens lack any justicially cognizable interest in prosecuting individuals.  *Linda*

*R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  Thus, an individual cannot seek criminal

prosecution even if he or she was the victim of a criminal offense committed by another.

*Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988).  Because Plaintiff cannot pursue

criminal charges being brought against Doane or Solis, the undersigned respectfully

recommends that his claim seeking such charges be dismissed with prejudice as frivolous

and/or for failure to state a claim for relief.

### B.  Official Capacity Claims

Suits against individuals in their official capacities "generally represent only

another way of pleading an action against an entity of which an officer is an agent."

*Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations and

citation omitted).  Thus, to the extent Plaintiff seeks to sue the individual defendants in

their official capacities, it is effectively a suit against the officials' office, Aransas

County.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff has named Aransas County in this action.  However, he fails to state a §

1983 claim against Aransas County.  A municipality is liable for the constitutional

violations of its employees only if the alleged constitutional deprivations resulted from

municipal policy or custom.  *Monell v. Dep't of Social Services*, 436 U.S. 658, 694

(1978).  *See also Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 166 (5th  Cir.

2010) (noting that a municipality may not be subject to liability merely for employing a

tortfeasor; liability requires deliberate action attributable to the municipality that is the

direct cause of the alleged constitutional violation). Liability of a municipality under §

1983 requires proof of three elements: a policymaker; an official policy; and a violation

of constitutional rights whose "moving force" is the policy or custom.  *Monell*, 436 U.S.

at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff seeks to hold Aransas County liable due to the actions of the individual

defendants named in this case.  A local government entity like Aransas County, however,

cannot be held liable on such a *respondeat superior* basis.  *See Monell*, 436 U.S. at 694

(explaining that "a local government may not be sued under § 1983 for an injury inflicted

solely by its employees or agents").  Plaintiff otherwise fails to allege any county policy

or practice that is the "moving force" behind the violations of his constitutional rights.

Accordingly, the undersigned respectfully recommends that Plaintiff's claims against

Aransas County and the individual defendants in their official capacities be dismissed with prejudice.

### C.   Deliberate Indifference

#### *(1)   General Legal Principles*

While housed in a county jail, pre-trial detainees have "a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference."  *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)). [T]here is no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs such as medical care."  *Reyes v. Tom Green Jail*, No. 6:19-CV-00037-BU, 2022 WL 3588932, at *5 (N.D. Tex. Aug. 1, 2022), *recommendation adopted* 2022 WL 3588044 (N.D. Tex. Aug. 22, 2022) (citing *Hare*, 74 F.3d at 643).  Courts, therefore, apply the same deliberate indifference standard to medical claims brought by both pretrial detainees and convicted inmates.  *Kelson*, 1 F.4th at 418.

"Deliberate indifference is "an extremely high standard to meet."  *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).  In order to establish deliberate indifference:

> The [pretrial detainee] must first prove objective exposure to a substantial risk of serious harm—in other words, the [pretrial detainee] must prove a serious medical need. Second, the [pretrial detainee] must prove the

officials' subjective knowledge of this substantial risk. Third, the [pretrial detainee] must prove that the officials, despite their actual knowledge of the substantial risk, denied or delayed the [pretrial detainee's] medical treatment. Finally, the [pretrial detainee] must prove that the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain. Importantly, disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference.

*Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (cleaned up). *See also Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 305 (5th Cir. 2020) ("To prove deliberate indifference, the Plaintiffs must show that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the defendants actually drew the inference, and that the defendants disregarded that risk by failing to take reasonable measures to abate it." (cleaned up)).

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle v. Gamble*, 429 U.S. at 104-05 (1976). The prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). The Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of

serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson*, 245 F.3d at 458-59). *See also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk"). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

### (2)  Access to Medical Treatment

Plaintiff primarily claims that Doane and Solis acted with deliberate indifference to his medical needs when they failed to provide him access to medical treatment immediately following the van accident at 8:31 a.m. on April 20, 2022. Plaintiff alleges that: (1) at the time the transport van backed into the fence post at the courthouse, he immediately sustained whiplash and injuries to his head, neck, back, and wrists; (2) he then felt a pop between his shoulder blades, numbness in his hands, a sprained wrist, extreme pain, back ache, and the beginning of a migraine; (3) for the next several hours, Plaintiff felt similar symptoms as well as dizziness, trouble concentrating, nausea, and the inability to sit still; and (4) an MRI conducted on June 15, 2022 revealed that Plaintiff had sustained four herniated discs between his shoulder blades as a result of the van wreck and whiplash. (D.E. 16, pp. 7-9, 11-18, 34-35). Plaintiff's allegations, accepted as true, reflect that he was exposed to a substantial risk of serious harm in connection with the van accident.

Plaintiff, however, fails to allege sufficient facts to indicate that either Doane or Solis had actual knowledge of a substantial risk of serious harm to Plaintiff and then disregarded such by failing to take proper remedial measures.  Plaintiff offers no allegation to suggest that the van accident was serious as he does not reference major property damage or injuries to the other occupants in the van.

It is true that Plaintiff continually complained to Doane and Solis before and after his court hearing about not feeling too well, being in pain, and sustaining injuries to his back and neck.  However, his allegations do not reflect that his condition deteriorated substantially during his morning trip to the courthouse or that either Doane or Solis should have been aware of such deterioration to the extent that Plaintiff required immediate medical attention.  Indeed, Plaintiff alleges no facts to suggest that any of his injuries were visible or otherwise readily apparent as a medical emergency to Doane or Solis, who work as security officers without formal medical training.  *See Trevino v. Hinz*, 751 F. App'x 551, 555 (5th Cir. 2018) ("[A]n officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference."); *Rundles v. Arowosafe*, No. 6:19-CV-00014, 2020 WL 7054239, at *4 (E.D. Tex. Aug. 20, 2020), *report and recommendation adopted* 2020 WL 5939051 (E.D. Tex. Oct. 7, 2020) (rejecting inmate's deliberate indifference claim because he did not allege that officer "had the medical training necessary to subjectively recognize inmate's symptoms -- feeling very ill, having a fast heartbeat, being overheated, and chest hurting – as a medical emergency).

The undersigned concludes, therefore, that Plaintiff cannot satisfy the subjective prong of the deliberate indifference test because he has not plead that either Doane or Solis had the actual knowledge to infer a serious risk of substantial harm to Plaintiff.  The fact these defendants should have perceived the risk from Plaintiff's injury complaints is insufficient "to satisfy the high bar of a deliberate indifference claim."  *Rundles*, 2020 WL 7054239, at *4.  *See also Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) ("It is not enough to identify a significant risk that the official should have perceived but did not.") (internal quotations and citation omitted).

Even if Plaintiff could plead that either Doane or Solis had the requisite subjective knowledge to infer a substantial risk of harm, he has failed to allege facts sufficient to show that their denial of immediate medical care to Plaintiff in fact resulted in substantial harm.  Plaintiff's allegations reflect that the van accident occurred at 8:31 a.m. and that he received treatment from the ACDC's medical department several hours later around 1:00 p.m. in the form of Ibuprofen for pain and x-rays.  (D.E. 16, pp. 8, 19, 22). According to Plaintiff, neither Doane nor Solis had any role with regard to Plaintiff's medical care for his injuries once he was returned to the ACDC.  (*Id.* at 21).

Plaintiff alleges that, for several days after the accident, he continued to suffer from migraines and extreme pain around his spine and shoulder blades even after receiving pain medications from the ACDC nursing staff.  (*Id.* at 23-25).  Plaintiff further references the MRI performed on June 15, 2022, which revealed that he  suffered several herniated discs as a result of the accident.  (*Id.* at 34-35).  Plaintiff's allegations, accepted

as true, reflect that the four-and-a-half-hour delay in receiving medical care, attributed to Doane and Solis denying him immediate medical attention on April 20, 2022, did not result in substantial harm to Plaintiff.  Rather, Plaintiff's allegations reveal that the substantial harm occurred to Plaintiff at the time the transport van hit the large fence post at the courthouse.  Even though Plaintiff allegedly suffered in pain for several hours while awaiting medical treatment at the ACDC, such delay did not cause any lasting complications as to constitute deliberate indifference on the part of Doane or Solis.  *See Guzman v. Cockrell*, No. 9:10CV111, 2012 WL 4017926, at *7 (E.D. Tex. Sep. 4, 2012) (holding that a twelve-hour delay in receiving treatment by medical personnel for fractured ribs and collar bone suffered when he fell of his bunk, even where the prisoner was suffering in pain, did not constitute deliberate indifference); *Parker v. Doty,* No. 7:08-CV-029, 2009 WL 804098, at *2 (N.D. Tex. Mar. 25, 2009) (holding that increased back pain caused by delay in receiving medication does not constitute substantial harm).

In sum, Plaintiff has failed to satisfy all of the elements of a deliberate indifference claim regarding the actions of Doane and Solis in denying Plaintiff access to medical care following the van accident.  Accordingly, the undersigned respectfully recommends that the Court dismiss this deliberate indifference claim against Doane and Solis in their individual capacities with prejudice as frivolous and/or for failure to state a claim for relief.

### (3)    *Van Transport*

Liberally construed, Plaintiff claims that Doane and Solis acted with deliberate indifference to his health and safety in that: (1) Plaintiff's van seat had no seatbelt; and (2) the application of restraints and shackles on Plaintiff exacerbated his injuries when the van struck the fence post.

The mere failure to provide seatbelts to inmates during a transport does not, without more, amount to deliberate indifference. *Rogers v. Boatright*, 709 F.3d 403, 407-08 (5th Cir. 2013); *Cooks v. Crain*, 327 F. App'x 493, 494 (5th Cir. 2009); *Nixon v. Neal*, No. 20-2934, 2021 WL 2688950, at *8 (E.D. La. June 7, 2021), *report and recommendation adopted* 2021 WL 2680163 (E.D. La. June 30, 2021).  Furthermore, the occurrence of the accident alone, without more, does not "demonstrate a subjective belief on the part of the defendants that the plaintiff was placed at substantial risk of serious harm." *Nixon*, 2021 WL 2688950, at *8.  A plaintiff may nevertheless state a deliberate indifference claim when he "goes beyond simply asserting the need for an extra measure of safety against the possibility of harm, and also asserts additional allegations that the defendant operated the transport vehicle recklessly, knowing of the danger to the prisoner due to the lack of seatbelts." *Id.* (citing *Rogers*, 709 F.3d at 408-09).  *See also Miller v. Chapman*, No. 13-367, 2014 WL 2949287, at *2 (M.D. La. June 20, 2014) ("While Fifth Circuit jurisprudence instructs that an inmate's allegations of being deprived of seatbelts while being transported in restraints alone will not give rise to a constitutional claim,

when combine with allegations of reckless driving or a prior pattern of incidents, a viable claim may exist.") (footnotes and citations omitted).

Here, Plaintiff offers no allegations to suggest that Doane operated the van recklessly as he was driving Plaintiff and the other inmates to the Aransas County Courthouse.  He further alleges nothing to suggest that Doane has a pattern of reckless driving.  Plaintiff's allegations, accepted as true, fall short of indicating that either Doane or Solis was aware of facts which the inference could be drawn that Plaintiff was at substantial risk of harm and that they drew that inference in connection with the van ride. At most, Plaintiff's allegations suggest that Doane and Solis acted negligently in applying the restraints on Plaintiff in the van without a seatbelt and that Doane negligently backed into the fence post. Accordingly, the undersigned respectfully recommends that the Court dismiss this deliberate indifference claim against Doane and Solis in their individual capacities with prejudice as frivolous and/or for failure to state a claim for relief.

### (4)   *Reporting the Van Accident.*

Liberally construed, Plaintiff claims that Doane and Solis acted with deliberate indifference to Plaintiff's health when they failed to report the accident involving the inmate transport van.  However, the fact that either Doane or Solis failed to report the van accident does not implicate whether or not they acted with deliberate indifference in connection with the accident or Plaintiff's injuries in the immediate aftermath.  *See Bouknight v. Roesler*, No. 3:13-CV451, 2017 WL 1102695, at * 7 (S.D. Tex. Mar. 22, 2017) (explaining that prison official's failure to initiate an accident report regarding

21 / 25

inmate's fall "alone is not evidence of deliberate indifference").  Accordingly, the undersigned respectfully recommends that the Court dismiss this deliberate indifference claim against Doane and Solis in their individual capacities with prejudice as frivolous and/or for failure to state a claim for relief.

### D.      Verbal Harassment and Threats

Plaintiff complains that Capt. Andrade verbally harassed Plaintiff following the van accident, calling him a freeloader, and threatening to take away Plaintiff's medications or passes.  (D.E. 16, pp. 37-38.)  It is well settled that crude, unprofessional, or harassing remarks, even verbal threats by prison staff to an inmate, do not rise to the level of a constitutional violation. *Field v. Corr. Corp.*, 364 F. App'x 927, 930 (5th Cir. 2010).  *See also Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that "claims of verbal abuse are not actionable" constitutional claims); *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995) (concluding that verbal threats do not rise to the level of a constitutional violation); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1991) (*citing Bender v. Brumley,* 1 F.3d 271 (5th Cir. 1993)) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under Section 1983.").

Because Plaintiff fails to state an actionable constitutional claim against Andrade regarding his verbal harassment and threats, the undersigned respectfully recommends that this claim against Andrade in his individual capacity be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### E.      Grievances and Informal Requests

Plaintiff seeks to hold Deputy Chief Chapa liable for failing to provide him medical treatment in response to his numerous informal requests and formal grievances. (D.E. 16, pp. 26-28, 39-40).  Plaintiff acknowledged that his only interaction with Chapa was through his written requests and grievances.   (*Id.* at 40-41).

The undersigned finds that Plaintiff's allegations against Chapa, accepted as true, center on his dissatisfaction with Chapa's failure to resolve the informal and formal complaints in Plaintiff's favor and provide him with his requested medical treatment. Such allegations, however, fail to state a cognizable constitutional claim.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (recognizing that prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances); *Robinson v. Stephens*, No. 6:14-CV-701, 2017 WL 4112363, at *11 (E.D. Tex. Aug. 9, 2017), *report and recommendation adopted* 2017 WL 4101676 (E.D. Tex. Sep. 14, 2017) (holding that inmate's "claims that his grievances and letters were not investigated or answered to his

satisfaction lack an arguable basis in law and fail to state a claim upon which relief can be granted"),

Accordingly, it is respectfully recommended that Plaintiff's claims against Chapa be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

## V.    RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that all of Plaintiff's claims against **Aransas County and Chapa, Andrade, Doane, and Solis** in their official and individual capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).  It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.


Respectfully submitted on December 12, 2022.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).